646 So.2d 1212 (1994)
Gracie JEANSONNE
v.
WICK PUBLISHING COMPANY.
No. 94-CA-462.
Court of Appeal of Louisiana, Fifth Circuit.
November 29, 1994.
Writ Denied February 3, 1995.
*1213 Perry J. Roussel, Jr., Gerolyn P. Roussel, Roussel & Roussel, LaPlace, for plaintiff/appellant, Gracie Jeansonne.
David J. Bourgeois, Roy E. Sasser, Metairie, for defendant/appellee, Wick Pub. Co.
Before GAUDIN and DUFRESNE, JJ., and JOHN C. BOUTALL, J. Pro Tem.
JOHN C. BOUTALL, Judge Pro Tem.
Plaintiff, Gracie Jeansonne, appeals from a judgment of the Office of Workers' Compensation Administration which denied her claims for total disability benefits. We affirm.
In her claims for benefits, plaintiff alleged that "On June 16, 1992, Gracie Jeansonne did receive physical injuries and severe mental injuries resulting from a sudden, unexpected, and extraordinary stress relating to her employment. Gracie Jeansonne's condition continued and resulted in a total nervous breakdown from another sudden, unexpected, and extraordinary stress relating to her employment on October 5, 1992. Ms. Jeansonne's condition has resulted in total disability." The defendant answered, denying that plaintiff suffered any work related injury or occupational disease within the meaning of the worker's compensation statutes.
After a hearing, the trial court found that it was uncontroverted that plaintiff suffered from "mental illness and mental illness diagnosed as post traumatic stress disorder." The court further found that plaintiff's condition was not compensable because it was not a mental injury sustained as the result of a physical injury and/or as a result of "extraordinary" stress.

FACTS
Gracie Jeansonne testified that she had worked at L'Observator for six and one-half years prior to the incident. In June of 1992, she was a bookkeeper. On Tuesday, June 16, 1992, she went to her supervisor, Joseph Lucia, because the weekly "rack" money was missing. She was told to wait until the afternoon and speak with the circulation manager who had been responsible for turning in the money, Ms. Shelia Barrilleaux.
That afternoon she spoke with Ms. Barrilleaux. She testified that Ms. Barrilleaux claimed to have given her (Jeansonne) the money. According to Ms. Jeansonne, later that day, Mr. Lucia called her into his office, screamed at her and told her that Barrilleaux put the money on her desk and that she had been careless and "lost" it. Mr. Lucia then proceeded to search her desk and in doing so he picked up her chair and threw it at her, striking her right wrist. This event so unnerved her that she could no longer function; her daughter came and took her home. That night she was seen by her family doctor who told her to take the rest of the week off. She did not go to work on Wednesday, but returned on Thursday.
Ms. Jeansonne further testified that from that day forward, she became afraid of Mr. Lucia and was afraid to go to work. She continued to go, however, because she believed she was too old to find another job.
Mr. Lucia testified that on the date in question, Ms. Jeansonne entered his office and told him that some monies were missing. He told her that he would look into the matter. He asked Ms. Barrilleaux and she told him that the money had been placed on Mrs. Jeansonne's desk. Mr. Lucia relayed this message to plaintiff, she became irate and called Ms. Barrilleaux a thief. Mr. Lucia admitted that he yelled at Mrs. Jeansonne and told her to be quiet, and he further told her that by making the accusations she was exposing the company to a potential lawsuit. Mr. Lucia testified that he then went into Ms. Jeansonne's office, pulled her chair away from her desk and looked underneath the desk to see if the funds could have fallen. Mr. Lucia stated that Mrs. Jeansonne was behind him when he entered the office and *1214 that she was not in the path of the chair when he pushed it away from her desk.
Betty Parker, an employee, testified that she was in the office when Mr. Lucia came in and pulled the chair away. She testified that the chair rolled into the middle of the room and stopped. It did not strike Mrs. Jeansonne at any time.
Mr. Lucia left the L'Observator in July of 1992 and Mr. Mike Quinn took over. In August of 1992, Ms. Jeansonne's daughter and Ms. Barrilleaux engaged in fisticuffs outside of the daughter's business, with the result that charges were brought by Ms. Jeansonne's daughter. Ms. Jeansonne testified that Mr. Quinn called her into his office and asked her to speak to her daughter about resolving the matter. Ms. Jeansonne also testified that she believed that Mr. Quinn was threatening to fire her and her husband (who also worked for the L'Observator) if her daughter did not drop the charges against Ms. Barrilleaux.
In October of 1992, Ms. Jeansonne was terminated from employment when the bookkeeping office was moved to Bogalusa. The next day, Ms. Jeansonne was admitted to the psychiatric ward of East Jefferson General Hospital, where she stayed as an inpatient for ten days. Mrs. Jeansonne has been under continuous treatment for major depression and for post traumatic stress disorder.
Mr. Quinn testified at trial that upon her termination, Ms. Jeansonne was given severance pay. He stated that at that time, he told Ms. Jeansonne he would not "block her collection of unemployment benefits" and that he would assist her in finding a new job.

ANALYSIS
Ms. Jeansonne alleges that the June 16th incident in which she received physical injury (when struck by the chair) and extraordinary stress alone and in conjunction with her October termination from employment was the cause of her mental illness. She sought workers compensation benefits pursuant to La.R.S. 23:1021(7)(b) and (c) which provide in pertinent part:
(b) Mental injury caused by mental stress. Mental injury or illness resulting from work-related stress shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter, unless the mental injury was the result of a sudden, unexpected, and extraordinary stress related to the employment and is demonstrated by clear and convincing evidence.
(c) Mental injury caused by physical injury. A mental injury or illness caused by a physical injury to the employee's body shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence.
Thus, it was plaintiff's obligation to prove, by clear and convincing evidence, that a physical injury and/or extraordinary mental stress caused her to suffer a mental injury or illness. Creed v. Avondale Industries, Inc., 608 So.2d 226 (La.App. 5 Cir.1992).
In our review of the issues presented by appellant, we note that the findings of fact made by the trial judge shall not be disturbed on appeal absent manifest error. Gagnard v. Baldridge, 612 So.2d 732 (La. 1993).

ADMISSIBILITY OF PLAINTIFF'S SUSCEPTIBILITY TO STRESS
Plaintiff first argues that the trial court erred in excluding testimony which would reflect that Mrs. Jeansonne's supervisor, Mr. Lucia, knew that she was particularly susceptible to emotional distress and that the trial court also erred in failing to consider whether the supervisor knew of plaintiff's susceptibility in ruling on plaintiff's claim. In support of these allegations, plaintiff cites White v. Monsanto, 585 So.2d 1205 (La.1991). However, the White case involved a tort suit for the intentional infliction of emotional distress and not a claim for worker compensation benefits, and so is inapplicable to this case.
In Bryant v. Giani Inv. Co., 626 So.2d 390, 392-3 (La.App. 4 Cir.1993) writ denied, 94-0089 (La. 3/18/94), 634 So.2d 852, the Fourth *1215 Circuit noted that the subjective nature of a particular claimant's susceptibility had no relevance in a claim for worker compensation benefits due to "extraordinary" mental stress:
By providing that a work related mental/mental injury will not be covered by worker's compensation `unless it results from an `extraordinary stress', R.S. 23:1021(7)(b), the Legislature clearly contemplated that there would be instances of work-related mental/mental injuries not caused by an `extraordinary-stress' and, consequently, not covered by worker's compensation.
This latter point suggests that the `extraordinary' nature of the stress at issue should be determined, not from the point of view of whether the particular claimant found the stress to be extraordinary, but whether an ordinary reasonable person of usual sensibilities would find the stress extraordinary. Otherwise, every stress that actually caused the injury would be considered `extraordinary' because no one, from their own personal perspective, would consider to be `ordinary' a stress that caused them mental injury or illness. Thus, to determine whether a stress is `extraordinary' by using the perspective of the particular claimant who suffered a mental/mental injury as a result of the stress at issue would be wholly inconsistent with the statutory scheme which contemplates non-covered mental/mental injury caused by work-related stress which is not "extraordinary". (Citations omitted).
Therefore, we find that the trial court did not err in failing to allow testimony of Ms. Jeansonne's particular susceptibilities and Mr. Lucia's knowledge of same and in failing to consider these susceptibilities in determining whether these work related incidents constituted "extraordinary stress."

MENTAL INJURY CAUSED BY PHYSICAL INJURY
Plaintiff alleges that the trial court erred failing to find that she suffered a mental injury as a result of a physical injury, namely the injury she received when she was struck by the chair. In conjunction with this argument, she alleges that the trial court erred in holding that plaintiff was required to prove that the chair hit her by clear and convincing evidence. It is plaintiff's contention that the clear and convincing burden of proof is required to show that the mental injury occurred as a result of the physical injury, but not to show that the physical injury occurred.
In this case, Gracie Jeansonne testified that Mr. Lucia threw the chair and hit her in the wrist. However, Mr. Lucia and Betty Parker both testified that, although he forcefully pushed the chair away from the desk, it rolled on the ground in the opposite direction from where Ms. Jeansonne was standing. Ms. Jeansonnes' daughter and her husband both testified to plaintiff's mental condition after the confrontation. Neither testimony contained a statement that she told them she was hit by a chair. On the date of the incident, Ms. Jeansonne saw her family physician, Dr. McManus and she telephoned Carol Dubisson, a regional supervisor and told her of the incident. Ms. Jeansonne did not relate that she was struck by the chair to either party. Ms. Jeansonne also failed to mention the physical injury in a discussion with a co-worker, Amy Miller, several days later. Finally, Ms. Jeansonne was treated by Drs. Davis and Jepson after her mental collapse in October of 1992. She did not tell either of them that she was struck by the chair. Finally, there is no evidence in the record to show that Ms. Jeansonne received any type of medical attention for an injury to her wrist on or around the date of the incident.
The trial court ruled that Ms. Jeansonne did not prove a physical injury. Under either burden of proof, clear and convincing or preponderance of the evidence, we cannot say that the trial judge was manifestly erroneous.

MENTAL INJURY CAUSED BY MENTAL STRESS
Plaintiff challenges the ruling of the trial court which found that she had not suffered a work related accident as a result of "extraordinary stress". It is plaintiff contention *1216 that the June 16th incident with Mr. Lucia, by itself and in conjunction with, her termination from employment in October, constituted the "extraordinary stress" causing her mental injury and, therefore, she is entitled to worker's compensation. As discussed supra, the threshold determination is whether a person of ordinary sensibilities would have found the confrontation to constitute "extraordinary" stress.
The trial court found that Ms. Jeansonne initiated the June 16th argument with Mr. Lucia by her accusations against an employee. The trial court further found that Mr. Lucia did not harm Ms. Jeansonne, nor did he threaten her. The court also found that the argument, while loud and fierce, did not reasonably cause Ms. Jeansonne to fear for her physical safety. The court therefore determined that "... the argument was unpleasant for the employee and the supervisor's actions are not acceptable to this Court. However, it was not `extraordinary stress' as envisioned by the worker's compensation laws."
After a careful consideration of this testimony, we cannot say that the trial court was manifestly erroneous in this finding. Compare Bryant v. Giani Inv. Co., supra; Beaudoin v. Hartford Acc. & Indem. Co., 594 So.2d 1049 (La.App. 3 Cir.1992); Smith v. Mercy Hospital, 597 So.2d 114 (La.App. 4 Cir.1992); McDonald v. American General, 570 So.2d 98 (La.App. 4 Cir.1990).
In addition, Ms. Jeansonne's termination from employment in October did not constitute extraordinary stress. Ms. Jeansonne testified that she believed she was fired as a result of an incident between her daughter and Ms. Barrilleaux in August. However, the evidence at trial showed that Ms. Jeansonne was terminated from employment in October due to the closing of the Houma bookkeeping office and that this move was contemplated prior to the incident between Ms. Jeansonne's daughter and Ms. Barrilleaux. We therefore see no manifest error in the trial court's finding that the October termination did not constitute "extraordinary stress."
Accordingly, we find that the trial court did not err in holding that Ms. Jeansonne failed to prove that she suffered a compensable mental injury within the meaning of La. R.S. 23:1021(7)(b).

Permanent Disability and Attorney Fees
Finally, Ms. Jeansonne alleges that the trial court erred in failing to find that she was permanently, totally disabled and in failing to award penalties and attorneys fees for defendants' failure to pay benefits. In light of the above, we find these arguments to be without merit.
For the above discussed reasons, the judgment of the trial court is affirmed. All costs are assessed against plaintiff.
AFFIRMED.